## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 14-40** |
| **DONALD NIDES** | **SECTION "E"(3)** |

## ORDER

Pending before the Court is a motion filed by Defendant Nides ("Nides") to dismiss Counts 2, 4, 5, 6, and 10 of the superseding indictment.[1] Nides contends that these Counts "are quixotic, untimely, and vindictive" and seeks them dismissed.[2] The Court has reviewed the briefs, the record, and the applicable law and now issues this Order.

## BACKGROUND

This criminal case arises out of the operation of "pill mill" pain management clinics by Defendants Tiffany Miller ("Miller") and Joseph Mogan ("Mogan), which allegedly "dispense[d] quantities of oxycodone (oxycontin), opana, MS contin, methodone, hydromorphone, hydrocodone, alprazolam, diazepam, clonazepam, butalbital, carisprodal, and other Schedule II, III, and IV controlled substances outside the scope of professional practice and not for a legitimate medical purpose," and Defendant Nides's alleged assistance in covering up that activity while a New Orleans Police Department officer deputized as a Drug Enforcement Agency ("DEA") Tactical Diversion Task Force member.[3]

---

[1] R. Doc. 85 (Motion to Dismiss); R. Doc. 71 (Superseding Indictment).
[2] R. Doc. 85-1 at p. 1.
[3] R. Doc. 71 at pp. 2−5.

The original nine-count indictment was returned on February 21, 2014.[4] On August 8, 2014, the superseding indictment was returned, which added Count 10.[5] Count 1 charges that Miller, Mogan, and Nides conspired to dispense controlled substances at the Omni Clinic, a pain management clinic operated by Miller and Mogan, in violation of 21 U.S.C. § 841(a) and 846.[6] According to the superseding indictment, Nides conspired with Miller and Mogan by illegally aiding the operation of their clinics and assisting them in their attempts to evade law enforcement.[7] He did so by allegedly accepting cash payments and sex acts in exchange for his failing to investigate their illegal activities and disclosing "red flags" that the DEA used to identify "pill mills."[8] The superseding indictment also alleges that Nides warned Miller about an upcoming DEA search of a different pain clinic operated by Miller's sister.[9] Nides does not challenge Count 1 in the pending motion, but he argues Counts 2, 4, 5, 6, and 10 should be dismissed for various reasons as set forth below.

## DISCUSSION

### A.  Counts 2, 4, and 5

Nides moves to dismiss Counts 2, 4 and 5 of the superseding indictment on the basis that they are barred by the statute of limitations.[10] Specifically, he argues that the tolling agreements signed by Defendant expressly exclude these Counts, so they were not timely when the indictment was filed because the extensions provided for in the agreements did not save unenumerated offenses.[11] The Government responds that

---

[4] R. Doc. 1.
[5] R. Doc. 71.
[6] *Id.* at pp. 2–20.
[7] *Id.* at p. 12.
[8] *Id.*
[9] *Id.* at p. 14.
[10] R. Doc. 85-1 at pp. 5–9.
[11] R. *Id.*

2

Nides's argument seeks to contort the tolling agreements to read them in a way unsupported by the language of the agreements and the parties' intent for the agreements to affect all criminal offenses related to the investigation of the operation of the clinics.[12]

The indictment charging Counts 2 and 4 was returned, filed, and sealed on February 21, 2014 and unsealed on February 24, 2014.[13] Count 2 charges Nides with use of a telephone on March 7, 2008 to facilitate the conspiracy charged in Count 1 in violation of 21 U.S.C. § 843(b).[14] Count 4 charges Nides with conspiracy by a public official to receive bribes in violation of 18 U.S.C. § 201(b)(2),[15] which is based on his alleged acceptance of sex and money while a deputized DEA agent in return for being influenced in the performance of his official acts to assist the unlawful operation of the "pill mills" for a number of years until on or about March 14, 2008.[16]

The statute of limitations applicable to this matter provides: "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."[17] This period is tolled when an indictment is timely returned and filed.[18] Nides argues that "the filing of the original indictment on February 21, 2014 would have tolled the statute of limitations . . . for offenses committed between February 21, 2009 and February 21, 2014. Clearly

---

[12] R. Doc. 92 at pp. 4–9.
[13] R. Doc. 1; R. Doc. 8.
[14] R. Doc. 71 at pp. 20–21.
[15] *Id.* at pp. 23–25.
[16] *Id.* at pp. 23–24.
[17] 18 U.S.C. § 3282.
[18] *See U.S. v. Schmick*, 904 F.2d 936, 940 (5th Cir. 1990) ("The return of a timely indictment tolls the statute of limitations as to the charges alleged therein."); *United States v. Sharpe*, 995 F.2d 49, 52 (5th Cir. 1993) (holding that "an indictment sealed within the statutory period of limitations but unsealed after that time period has expired tolls the statute of limitations" and "does not bar prosecution absent a showing of actual substantial prejudice").

then, the original indictment was not timely with regard to the Count 2 telephone call on March 7, 2008 and the Count 4 conspiracy that ended on March 14, 2008."[19]

The timeliness of Counts 2 and 4 depends upon the interpretation of the tolling agreements entered into by Nides on March 1, 2013 and August 20, 2013, in which he originally agreed to toll the statute of limitations through September 1, 2013 and then to extend the waiver until March 1, 2014 in the second agreement.[20] The agreements both begin by stating that "Donald Nides understands that he and others are the subjects of a federal criminal investigation relating to the management and operation of the Omni Pain Clinics."[21] The agreements then list certain offenses, stating that they are "[s]ome of the criminal statutes that may be applicable."[22] The next paragraphs then state: "Donald Nides agrees to toll the statute of limitations applicable to these offenses until September 1, 2013," and "agrees to extend the waiver of statute of limitations until March 1, 2014," respectively.[23] The critical question is whether the agreements toll all crimes related to the investigation of the Omni Pain Clinics or just the crimes enumerated in the agreements.

Nides claims that "[u]pon closer examination, . . . it appears that the Counts 2 and 4 offenses were expressly excluded from the tolling agreements."[24] In support, he points to language in the second paragraph of each agreement, which state: "'Donald Nides agrees to toll the statute of limitations *applicable to these offenses.*'"[25] Nides argues that the phrase "these offenses" refers to those crimes enumerated in the first

---

[19] R. Doc. 85-1 at pp. 5–6.
[20] R. Doc. 85-2 (Defendant's Exhibit A).
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] R. Doc. 85-1 at p. 6.
[25] *Id.* at p. 7 (quoting R. Doc. 85-2 (Defendant's Exhibit A)).

paragraph of each agreement; "[t]herefore, Nides expressly did not waive the statute of limitations with regard to the telephone offense charged in Count 2 and the conspiracy to accept bribes charged in Count 4" because "none of these offenses were *enumerated as applicable* to the waiver agreements."[26] He asserts that "the plain language of the tolling agreements makes it clear that Nides never waived the Statute as to . . . unenumerated offenses;" accordingly, Counts 2 and 4 must be dismissed as untimely since they were unenumerated and barred because they were allegedly committed more than five years before the indictment was returned and filed.[27] He also argues that as a matter of contract law, it was never Nides's intent to agree to toll any and all crimes, so the tolling agreements are unenforceable.[28]

The Government responds that the language of the tolling agreements does not permit such a reading.[29] Instead, "[t]he agreement was that the government would forbear from bringing any charges if the defendant would agree to toll the limitations period on all charges while the defense investigated the allegations and its defenses."[30] The list of some offenses in the agreements served "to provide Nides and his counsel some understanding of what conduct they needed to focus on" to prepare Nides's defense;[31] the tolling agreements were not intended by the parties to be limited to the few examples given by the Government.[32] The language of the agreements indicates that the waiver was intended to be broader than just the enumerated crimes.[33]

---

[26] *Id.*
[27] R. Doc. 98 at p. 3.
[28] *Id.* at pp. 3–4.
[29] R. Doc. 92.
[30] *Id.* at pp. 6–7.
[31] *Id.* at p. 5.
[32] *Id.* at pp. 5–7.
[33] *Id.* at pp. 8–9.

The Court agrees with the Government. Both agreements list certain offenses in the first paragraph, preceded by the phrase "*[s]ome* of the criminal statutes that *may* be applicable" in the "federal criminal investigation . . . of the Omni Pain Clinics."[34] When the reference to "these offenses" in the second paragraph is read in the context of the entire agreement, it is apparent that the list of enumerated crimes in both agreements is not exclusive.[35] Rather, the list was meant to provide notice of the types of offenses that may be charged as a result of the Government's investigation into the clinics. The remaining language in the agreements is consistent with the finding that Nides's reasonable understanding when he entered into the agreements was that he was waiving the statute of limitations for all criminal offenses related to the investigation of the management and operation of the Omni Pain Clinics in exchange for the government's forbearance in bringing any federal charges for the excluded period.[36] Accordingly, Defendant's motion is denied with respect to Counts 2 and 4.

Nides also challenges Count 5 of the superseding indictment as untimely.[37] Count 5 charges Nides with conspiracy to illegally receive property from another under color of

---

[34] R. Doc. 85-2 (Defendant's Exhibit A) (emphasis added).

[35] Furthermore, there is no indication in the agreements that the reference to "these offenses" in the second paragraph is tied to the specific statutes as opposed to all offenses that may be charged after the investigation.

[36] The Court notes that the interpretation of a waiver of the statute of limitations is governed by the law of contracts. *United States v. Richards*, 925 F. Supp. 1097, 1011 (D.N.J. 1996) (applying the law of contracts because "[l]ike plea agreements, a waiver of the statute of limitations is a pretrial agreement between the state and the defendant"). "Thus, the question is what did the defendant reasonably under the agreement to mean when he entered it." *Id.* Although Nides claims that he did not waive the statute of limitations with respect to the unenumerated offenses, R. Doc. 85-1 at p. 7, the Court finds that based on the language of the agreements, Nides's reasonable understanding at the time he agreed to them was that he was waiving the statute of limitations as it applied to *all* criminal charges, not just those enumerated. *See* R. Doc. 85-2 (Defendant's Exhibit A) (emphasis added) (stating "[t]his waiver has no bearing on *any offenses* that may have already prescribed," Nides "does not waive any constitutional or statutory right to a speedy trial except to the extent that indictment of *any criminal charge* may be delayed," and "[t]his agreement is neither an acknowledge[ment] by Donald Nides that he has *violated federal criminal law* nor an acknowledgment by the government that there are any statute of limitations issues").

[37] R. Doc. 85-1 at pp. 8—9

official right, in violation of 18 U.S.C. § 1951.[38] This statute criminalizes obstructing, delaying, or affecting commerce by extortion,[39] which is defined as "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."[40] The superseding indictment states that for a number of years "and continuing to in or about September, 2013," Nides allegedly received cash payments while serving as a law enforcement officer in exchange for his assistance in operating and concealing the "pill mills."[41] Nides argues in his motion to dismiss that he did not waive the statute of limitations with regard to Count 5 because "[t]his count, as restated in the superseding indictment, makes it clear that the last extorted payment allegedly occurred in July, 2008. That being the case, Count 5 was also barred by the February 21, 2009 cut-off date for the original indictment" for the same reasons as discussed above.[42]

Defendant acknowledges that the superseding indictment alleged that the offense was ongoing until September 2013.[43] Defendant argues, though, that "it is quite absurd to contend that Nides was participating in this offense in September 2013 right in the middle of the tolling extensions he granted the government. . . . Disregarding this absurdity, and focusing on factual overt acts, the restated Count 5 alleged that the last cash payment was made in July 2008 well before the February 21, 2009 cut-off date for the original indictment."[44]

---

[38] R. Doc. 71 at pp. 25–26.
[39] 18 U.S.C. § 1951
[40] 18 U.S.C. § 1951(b)(2).
[41] R. Doc. 71 at pp. 25–26.
[42] R. Doc. 85-1 at p. 8.
[43] *Id.*
[44] *Id.*

The Government responds that Count 5 is not time barred because it "had not prescribed when the original indictment was returned," and "[i]n the superseding indictment, [Count 5 is] alleged to have ended on or about September 2013."[45] Additionally, "[t]he superseding indictment sets forth overt acts in Count 5 during the period May 27, 2009, and June 5, 2009, well after the February 21, 2009 tolling date" because Count 5 incorporates by reference sections C and D of Count 1.[46] Thus, the Count is timely.

The Court agrees with the Government. Accepting as true the Government's allegation in the superseding indictment that the conspiracy continued through September of 2013 and, if sections C and D of Count 1 are incorporated into Count 5, the Count would not be time barred by the statute of limitations. Even if the Court disregarded the allegations of the continuing conspiracy and incorporated acts and instead used the July 2008 date as the time when the five-year limitations period began to accrue, the Count would still be timely for the same reasons as discussed above with respect to the tolling agreements. Accordingly, Defendant's motion is denied with respect to Count 5.

## B. Count 6

Nides argues that Count 6, an enumerated offense in the tolling agreements, also must be dismissed because it became untimely when the Government breached the tolling agreements.[47] He further argues that it remains impermissibly vague in that it does not specify when, where, and how the obstruction occurred.[48] Count 6 charges Nides with obstruction of justice to prevent communication to law enforcement about

---

[45] R. Doc. 92 at p. 7 n.1; R. Doc. 71 at p. 25 (Count 5).
[46] R. Doc. 92 at p. 7 n.1; R. Doc. 71 at p. 25 (Count 5).
[47] R. Doc. 85-1 at pp. 9–11.
[48] *Id.* at pp. 11–12.

federal crimes in violation of 18 U.S.C. § 1512(b)(3).[49] The Court previously dismissed Count 6 in the original indictment as impermissibly vague.[50] The superseding indictment now alleges that Nides attempted to intimidate, threaten, and corruptly persuade Tiffany Miller and Steven Cardwell "with the intent to hinder, delay, and prevent the communication to a law enforcement officer of information relating to the commission of federal offenses."[51]

First, Nides claims that Count 6 became untimely because the government breached the tolling agreements by bringing charges after March 1, 2014.[52] Defendant asserts that "[t]olling agreements, like other contracts, are two-way streets. Consequently, while Nides granted the additional one-year period that created the government's 'window of opportunity,' Nides, on his part, did not *waive the statute of limitations ad infinitum*. Rather, Nides relied on the government's representation that offenses approaching the statute's five-year cut-off would be brought by March 1, 2014."[53] Nides argues: "As to Count 6, we contend as a matter of contract law that what Nides – like his attorney – understood at the time was that in exchange for his agreement to extend to the government a one-year grace period for bringing charges on enumerated offenses, the government agreed not to bring charges after March 1, 2014."[54] Thus, since the superseding indictment was filed on August 8, 2014, it was

---

[49] R. Doc. 71 at pp. 26–27.
[50] R. Doc. 53.
[51] R. Doc. 71 at p. 27.
[52] R. Doc. 85-1 at p. 9.
[53] *Id.*
[54] R. Doc. 98 at pp. 3–4. The Defendant references the affidavit of Edward Castaing, Nides's former attorney. R. Doc. 85-4 (Exhibit C) (swearing "[t]hat had he known that the government would take the position that it could charge his client with offenses after March 1, 2014 he would not have allowed his client to enter into any such agreement under the terms stated therin").

untimely by some six months because it was filed after March 1, 2014, so Count 6 must be dismissed.[55]

The Government argues that regardless of the effect of the tolling agreements, Count 6 had not prescribed when the superseding indictment was returned because "obstruction of justice is a continuing offense and the superseding indictment specifically charges that the criminal activity continued until in [sic] or about September 2013."[56] Additionally, the Government asserts that "the tolling agreement nowhere sets a cutoff date for the government to bring charges."[57] Thus, the claim is not barred.

The Court agrees with the Government. The statute describing obstruction of justice contemplates that an indictment may be returned for a "continuing course of conduct" rather than "for each discrete act of obstruction."[58] Thus, Count 6 was not time barred when the superseding indictment was filed. Even if it were, the Court finds the Government's argument as to the interpretation of the tolling agreements more persuasive. The first agreement states that "Donald Nides understands that he has a right under 18 U.S.C. § 3282(a) to have most Title 18 criminal charges brought within 5 years of the date of these offenses" and that "[h]e waives that right and should he at a later time assert the statute of limitations as a bar to prosecution, the period commencing from the date of the agreement up to and including September 1, 2013, will be excluded from the calculation of the limitations period."[59] The second agreement extended this period to March 1, 2014.[60] A reasonable person would not read this provision as setting forth a cut-off date for the Government to bring charges. Rather, the

---

[55] R. Doc. 85-1 at p. 10.
[56] R. Doc. 92 at pp. 9–10.
[57] R. Doc. 92 at p. 10.
[58] 18 U.S.C. § 1503; *See United States v. Berardi*, 675 F.2d 894, 898 (7th Cir. 1982);
[59] R. Doc. 85-2 (Exhibit A).
[60] R. Doc. 85-2 (Exhibit A).

language of the agreements clearly indicates that the agreements affect the calculation of the statute of limitations.[61]

Second, Nides claims that Count 6 must again be dismissed as vague, just as it was in the original indictment.[62] Defendant claims that "there is no specification in Count 6 as to when, where and how the obstruction occurred. Thus, we are left with the conundrum of determining when this offense occurred during the five and one-half year timespan or 1,980 days alleged in the superseding indictment."[63] The Government argues that the superseding indictment cures the defect.[64] The Court originally dismissed Count 6 in the original indictment for vagueness because it "[did] not inform [the Defendant] who the Government allege[d] he attempted to intimidate and therefore [did] not inform him 'of what it [was] that the government [intended] to prove in satisfying each element of the crime' or enable[d] him to 'assert double jeopardy and not be subject to prosecution for charges not presented to the grand jury.'"[65] The Government states that this problem was remedied by the superseding indictment in that it now identifies the victims and provides further particularities of the telephone calls.[66]

The Court finds that Count 6 in the superseding indictment is not vague. The allegations in Count 6 sufficiently support the charge because they set forth who Nides

---

[61] To the extent Nides is arguing that Count 6 in the superseding indictment is untimely because the Court dismissed Count 6 in the original indictment and the statute of limitations had expired, the Court rejects this argument. "A superseding indictment filed while the initial indictment is pending is timely unless it broadens or substantially amends the charges made in the original indictment." *United States v. Schmick*, 904 F.2d 936, 940 (5th Cir. 1990). Additionally, if a count was timely when the indictment was filed but dismissed after the statute of limitations has run, there is a six-month grace period for returning a new indictment as to the dismissed count. 18 U.S.C. § 3288.
[62] R. Doc. 85-1 at pp. 11–12.
[63] *Id.* at p. 12.
[64] R. Doc. 92 at p. 11.
[65] R. Doc. 53 at pp. 4–5 (quoting *United States v. Kay*, 359 F.3d 738, 756 (5th Cir. 2004)).
[66] R. Doc. 92 at p. 11.

allegedly attempted to intimidate and provide adequate notice to the Defendant of what the Government intends to prove. Accordingly, Defendant's motion is denied with respect to Count 6.

## C. Count 10

Counts 7 through 10 charge Nides with making various false statements to federal agents.[67] The superseding indictment added Count 10, which alleges that Nides falsely denied to a DEA special agent that he received financial benefits or sex acts from Miller.[68] Nides argues that this Count should be dismissed for following reasons: the Government misused the grand jury, the charge arose out of vindictiveness for Nides having successfully challenged Count 6 of the original indictment, and the Count fails to state an offense.[69]

Defendant claims that "Count 10 of the superseding indictment should be dismissed because its addition constitutes a misuse of the grand jury" because the superseding grand jury may not have been told of the facts surrounding the original indictment and grand jury.[70] However, because the same grand jury returned both the original and superseding indictments,[71] this argument is moot.

Additionally, Defendant argues that Count 10 was vindictively included in the superseding indictment because he exercised his legal right in his previous motion to dismiss.[72] "The defendant has the burden of proving, by a preponderance of the evidence, prosecutorial vindictiveness.[73] There are two ways in which a defendant can

---

[67] R. Doc. 85-1 at pp. 27–29.
[68] R. Doc. 71 at p. 29.
[69] R. Doc. 85-1 at pp. 12–16.
[70] *Id.* at pp. 14–15.
[71] R. Doc. 92 at pp. 13–14.
[72] R. Doc. 85-1 at p. 13.
[73] *United States v. Saltzman*, 537 F.3d 353, 359 (5th Cir. 2008) (citing *United States v. Krezdorn*, 718 F.2d 1360, 1365 (5th Cir. 1983)).

meet his burden: he "may prove actual vindictiveness by presenting objective evidence that the prosecutor's actions were designed to punish a defendant for asserting his legal rights" or "show sufficient facts to give rise to a presumption of vindictiveness."[74] The Court finds that Defendant has failed to meet his burden. The mere fact that the Government added Count 10 after Nides successfully moved to dismiss Count 6 of the original indictment, without more, does not establish prosecutorial vindictiveness.

Lastly, Defendant argues that "[a]part from vindictiveness, not only does Count 10 fail to state an offense, it attempts to manufacture one that has never existed in the annals of criminal justice."[75] He claims that Count 10 was added to prosecute Nides for failing a polygraph test, which Defendant argues is not a crime.[76] Defendant additionally claims that the allegedly false statement was not a material statement.[77] The Government responds that Count 10 does not involve any false statements made while being polygraphed, but rather false statements made voluntarily to a DEA special agent prior to the administration of the polygraph examination.[78] Further, the Government states that "actual influence or reliance by a government agency is not required" for a statement to be material.[79]

The Court finds the Government's argument more persuasive. Count 10 does not prosecute Nides for false statements made to a DEA agent *during* a polygraph. Instead, it relates to voluntary statements Nides made to the DEA special agent *prior* to the polygraph examination taking place. Accordingly, Defendant's motion with respect to Count 10 is denied.

---

[74] *Id.*
[75] R. Doc. 85-1 at p. 15.
[76] *Id.* at pp. 15-16.
[77] *Id.* at p. 15.
[78] R. Doc. 92 at p. 14.
[79] *Id.* (quoting *United States v. Puente*, 982 F.2d 156, 159 (5th Cir. 1993).

## CONCLUSION

**IT IS ORDERED** that Defendant Nides's motion to dismiss Counts 2, 4, 5, 6 and 10 of the superseding indictment[80] is **DENIED**.

**New Orleans, Louisiana, this** __29th__ **day of** ___October___ **, 2014.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[80] R. Doc. 85.

14